UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

LISA DEHAAN,

                Plaintiff,                                Case No.  1:16-CV-311

v.

                                               HON. PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant,

——————————————————————/

## OPINION

        This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review

of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying

Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles

II and XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative

record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be

conclusive.

## STANDARD OF REVIEW

        The scope of judicial review in a social security case is limited to determining whether the

Commissioner applied the proper legal standards in making her decision and whether there exists in the

record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*,

889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve

evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th

Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was thirty-nine years of age on the date of the ALJ's decision. (PageID.46, 141, 151.) She obtained a college degree, and was previously employed as a cashier / customer service clerk, shift supervisor, customer service representative, mail carrier, and delivery driver. (PageID.58, 72–73.) Plaintiff applied for benefits on February 2, 2013, alleging that she had been disabled since October 31, 2011, due to anxiety, panic attacks, and depression. (PageID.141, 151, 241–252.) These applications

2

were denied on July 17, 2013, after which time Plaintiff requested a hearing before an ALJ. (PageID.164–176.) On November 12, 2014, Plaintiff appeared with her counsel before ALJ Michael Condon for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.66–134.) On January 30, 2015, the ALJ issued his written decision, concluding that Plaintiff was not disabled. (PageID.46–65.) On January 20, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.31–34.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity

---

[1] 1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

(RFC).  *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*

The ALJ determined Plaintiff's claim failed at step five.  At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date.  (PageID.51.)  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) major depressive disorder, recurrent, moderate; (2) generalized anxiety / panic disorder with agoraphobia; and (3) personality disorder.  (PageID.51.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (PageID.52–53.)  At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform:

> a full range of work at all exertional levels with the following nonexertional limitations: she is limited to performing simple, routine, repetitive tasks involving no more than simple work-related decisions; she cannot tolerate more than occasional workplace changes which must be gradually introduced; she requires a low-stress work environment (i.e., one that involves no specific production quotas); and she cannot maintain contact with the general public or more than brief, superficial contact with co-workers and supervisors.

(PageID.53.)    Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform her past relevant work.  (PageID.58.)  At the fifth step, the ALJ questioned the VE to determine whether

a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See*

*Richardson*, 735 F.2d at 964.  The VE testified that Plaintiff could perform the following work: machine

feeder (15,500 regional positions), cleaner (25,600 regional positions), and packager (7,200 regional

positions). (PageID.128–129.)  Based on this record, the ALJ found that Plaintiff was capable of making

a successful adjustment to work that exists in significant numbers in the national economy. (PageID.60.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from October 31, 2011,

through January 30, 2015, the date of decision.  (PageID.60.)

## DISCUSSION

### 1.    The ALJ's Analysis of Dr. Albrecht's Opinion Complies With the Treating Physician Rule and the ALJ was Not Required to Adopt the Opinion at Step Three.

On July 3, 2014, Dr. David Albrecht completed a two-page Medical Source Statement

regarding Plaintiff's ability to complete mental work-related activities. (PageID.427–428.)  Among other

things, Dr. Albrecht indicated that Plaintiff had "marked"[2] limitations in the areas of understanding,

remembering, and carrying out short, simple instructions.  She was also markedly limited in the ability to

make judgments on simple work-related decisions, and markedly limited in responding appropriately to

changes in a routine work setting. (PageID.427–428.)  When asked for the findings that supported this

assessment, Dr. Albrecht indicated Plaintiff experiences severe depression and anxiety, and it is difficult for

her to maintain her concentration because of the severe nature of those impairments. (PageID.427.)  Dr.

---

[2] Defined as a serious limitation in which the ability to function is severely limited but not precluded. (PageID.427.)

5

Albrecht also found Plaintiff experienced several additional "moderate"[3] limitations. She had moderate limitations in the areas of interacting appropriately with the public, supervisors, and co-workers, as well as responding appropriately to work pressures in a routine work setting. (PageID.428.) In support of this assessment, the doctor again noted Plaintiff's severe depression and anxiety. (PageID.428.) Dr. Albrecht concluded by noting that Plaintiff would have difficulty concentrating and holding employment because of her impairments. (PageID.428.) The ALJ gave this opinion only nominal weight. (PageID.57.) Plaintiff claims the ALJ erred in doing so.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It is undisputed that Dr. Albrecht qualifies as a treating physician.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical

---

[3] Defined as moderate limitations, but the individual is still able to function satisfactorily. (PageID.427.)

6

record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964

F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of*

*Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

        If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must

"give good reasons" for doing so. *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the

evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers

the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.*  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review

of the ALJ's application of the rule."  *Id.*  (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective

findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit

meaningful review of the ALJ's assessment.  *Id.* at 376–77.

        If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ

must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the

following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and

extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the

record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20

C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record

must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*,

*Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448,

450 (5th Cir. 2007).

The ALJ explained he was assigning Dr. Albrecht's opinion only nominal weight "because [it is] extreme and not supported by his treatment records or the other psychological evidence of record which shows that the claimant has consistently presented for medical appointments with intact abilities to maintain concentration and interact appropriately." (PageID.37.)  This assessment is supported by substantial evidence.  For example, when examined on September 16, 2013, by Ms. Becky Vass-Reinholtz, LMSW, Plaintiff's thought process, including productivity, continuity, orientation, memory, attention, concentration, judgment, reason, and insight were all within normal limits. (PageID.389.)  On January 10, 2014, Gail Merril, PA-C also found an intact thought process and judgment.  While Plaintiff had a poor short term memory, her long term memory was good.  She was oriented to person, place, and time. (PageID.401.)  At a follow up on February 10, 2014, her memory was described as good, and her concentration was described as improved.  She had good insight and judgment. (PageID.403.)  In April, Plaintiff had not been taking some of her medication, but she reported the medication she was taking was "helping a lot." (PageID.405.)  On June 26, 2014, Plaintiff told Dr. Albrecht that her depression and anxiety were not improved with medication changes (contrary to her previous statement).  Nonetheless, she was alert, oriented to person, place and time, had good judgment and insight, and a normal mood and affect.  (PageID.433.)  Dr. Albrecht made similar findings the following month.  (PageID.450.)

The Court finds the ALJ correctly determined these records, including those of the opining physician, were inconsistent with the doctor's opinion.  Clearly Plaintiff is limited by her mental impairments, but the ALJ's conclusion that Dr. Albrecht's opinion enjoyed little support in the record is supported by substantial evidence.  Plaintiff's impairments are adequately accounted for in the RFC.

Plaintiff argues, however, that the ALJ erred in assigning greater weight to the opinion of

an non-examining consultant than to her examining physician. (PageID.692.) Plaintiff is correct that "[a]s a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination." *Gayheart*, 710 F.3d at 375. But it is by no means as rigid a rule as Plaintiff apparently would prefer. Rather, an examining relationship is only one of the factors an ALJ is to consider when weighing medical opinions. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also McClean v. Colvin*, No. 3:11–cv–236, 2013 WL 4507807, at *8 (M.D. Tenn. Aug. 23, 2013) ("[R]espective examining and non-examining status [is] only one of several relevant factors [.]"); *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."). Consistency is another important factor: "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

The ALJ is responsible for weighing conflicting medical opinions. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."). Here, it is patent the ALJ understood the agency consultant had not examined Plaintiff, but nonetheless noted that the opinion was consistent with the record and was based upon the consultant's detailed knowledge of agency regulations. (PageID.57.) The ALJ accordingly properly evaluated the medical opinions under 20 C.F.R. §§ 404.1527(c), 927(c).

Finally, in Plaintiff's second claim of error, Plaintiff argues the ALJ erred in failing to find

that Plaintiff did not meet the requirements of Listing 12.04 or 12.06, noting the ALJ's statement at the hearing that the opinion would indicate Plaintiff met a listing. (PageID.693.) This argument is merely a rehash of Plaintiff's first claim of error. Because the ALJ provided good reasons, supported by substantial evidence, for assigning only nominal weight to Dr. Albrecht's opinion, the ALJ did not err in failing to adopt those limitations at step three. Accordingly, Plaintiff's first and second claims of error are rejected.

### 2. The ALJ Complied with SSR 96–7p.

Plaintiff argues that the ALJ "erred by denying Plaintiff benefits because she was too poor to obtain medical treatment." (PageID.694.) This claim turns on the ALJ's factual finding regarding the credibility of Plaintiff's subjective complaints. Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs*, 833 F.2d 589, 592 (6th Cir.1987). The court does not make its own credibility determinations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed." *Kuhn v. Comm'r of Soc. Sec.*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's

10

credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton*, 246 F.3d at 773; accord *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Plaintiff asserts the ALJ erred by failing to consider her inability to afford additional medical treatment. (PageID.694.) SSR 96–7p provides that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." This includes the individual's inability to afford treatment. SSR 96–7p, 1996 WL 374186, at *7–8 (S.S.A. July 2, 1996). The subject of Plaintiff's ability to obtain treatment was squarely before the ALJ during the administrative hearing. Indeed, as Plaintiff notes, she testified at several points that she was unable to obtain various treatments due to a lack of insurance. (PageID.90, 98.) But the ALJ engaged in an extensive discussion with Plaintiff regarding why she did not obtain additional treatment, such as hospitalization. Ultimately, Plaintiff admitted that hospitalization, even partial, just hadn't been explored either by her or her physicians. (PageID.98.) The ALJ acknowledged that "finances are a big issue on these things" but noted that many facilities see those with no fiscal means. (PageID.126.) This, along with the fact that the ALJ noted he considered all symptoms according to the requirements of, among other things, SSR 96–7p, indicates the ALJ was well aware of, and indeed complied with, his obligation under

the ruling.[4] (PageID.53.) The Court finds no compelling reason to disturb the ALJ's determination. *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

> **3.      The ALJ's Step Five Determination is Supported by Substantial Evidence**.

An ALJ's finding that a claimant possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

The pertinent regulation, 20 C.F.R. §§ 404.1566(d) (e), 416.966(d) (e), provides that while the agency can take administrative notice of reliable job information available from various publications (including the DOT), it can also use the services of a vocational expert or other specialist "[i]f the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used." The social security regulations do not require the

---

[4]Plaintiff's argument also references SSR 82–59. (PageID.694.) This ruling only applies in cases where the ALJ makes a finding that the claimant is disabled and so is inapplicable here. "A precondition to the applicability of SSR 82–59 is that the ALJ determine that the plaintiff was disabled. The ALJ did not determine that the claimant was disabled. Therefore, SSR 82–59 is inapposite to the facts of this case." *Williams v. Comm'r of Soc. Sec.*, No. 3:13 CV 1276, 2014 WL 1406433, at *13 (N.D. Ohio Apr. 10, 2014) (collecting cases); *Hatcher v. Comm'r of Soc. Sec.*, No. 12–cv–13831, 2013 WL 5291622, at * 6 (E.D. Mich. Sept. 19, 2013).

Commissioner or the VE to rely on classifications in a particular source, such as the DOT. *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995). In this case, the ALJ chose to use the services of a VE to determine whether Plaintiff could perform other work in the national economy. In reaching this determination, the VE relied on her personal experience and other sources such as the DOT as well as the State of Michigan Department of Labor Statistics. (PageID.131.) After questioning by Plaintiff's counsel, the VE testified her testimony was consistent with the DOT. (PageID.132.)

Plaintiff argues that the VE provided "raw numbers" that did not relate to the representative occupations. (PageID.698.) She claims the ALJ committed the same error that was present in *Boston v. Colvin*, No. 4:14-CV-206-D, 2016 WL 721563, at *12 (E.D.N.C. Feb. 2, 2016), *report and recommendation adopted*, No. 4:14-CV-206-D, 2016 WL 738762 (E.D.N.C. Feb. 23, 2016). The Court disagrees. There is nothing from the transcript of the hearing that demonstrates the VE merely provided numbers from a larger category as reflecting numbers for the DOT. To the contrary the ALJ testified that she would "break" the numbers down. (PageID.132.)

Moreover, while Plaintiff's counsel examined the VE, he did not ultimately object to the VE's testimony at the hearing and thus failed to preserve this issue for appeal. "This Court will not review the ALJ's decision with respect to issues not properly raised at the administrative level." *Maple v. Apfel*, 14 F. App'x 525, 537 (6th Cir. 2001). "The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Comm'r of Soc. Sec.*, No. 1:11-cv-1290, 2012 WL 4434078 at *3 (N.D. Ohio Sept. 24, 2012) (citing *Hammond v. Chater*, No. 96-3755, 1997 WL 338719 at *3 (6th Cir. June 18, 1997))

13

(finding the plaintiff's failure to raise objections to the VE's testimony waived the argument on appeal); *cf.*

*Helton v. Comm'r of Soc. Sec.*, No. 99-5736, 2000 WL 658056 at *2 (6th Cir. May 9, 2000)

(claimant's failure to dispute the VE's competency at the administrative hearing forfeits the issue for

purposes of judicial review).

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is supported by substantial

evidence and therefore will be **AFFIRMED.**

A separate judgment shall issue.


Dated: January 6, 2017                                    /s/ Paul L. Maloney
                                                          PAUL L. MALONEY
                                                          United States District Judge

14